Breitel, J. (dissenting).
In a particularly vicious and, by civilized standards, insufficiently provoked street fight, this defendant’s victim, a youth like himself, was stabbed four times, once in the back.[1] The facts are detailed in the opinion of the Appellate Division in the related case of People v. May (9 A D 2d 508), in wMch a codefendant’s conviction was reduced from murder in the second degree to manslaughter in the second degree, and the sentence reduced to 7½ to 15 years.
TMs defendant and two others were jointly tried for murder in the first degree and, under the law then extant, would have been exposed to a sentence of death if convicted. The jury acquitted one of the defendants, Corley, but convicted Montgomery and May of murder in the second degree. Only May appealed. The Appellate Division reduced Ms conviction and sentence. It held that the evidence was insufficient to establish that May had formed a murderous intent. It was also pointed out that the verdict was inconsistent in acquitting Corley, since Ms knowledge of the events concerning the street fight, and his participation, were exactly the same as May’s. It was emphasized that unless May knew ‘[1] beforehand that in tMs fight Montgomery would use a knife to kill he could not be convicted of murder unless he continued in the fight with intent to kill after he had knowledge of the use of the knife for that purpose. Mere failure to stop Montgomery would not spell out a murder. *135 And if, as the People say on appeal, the intent by Montgomery to kill was formed at the [1] instant ’ of the killing, the record does not show adequate opportunity by May thereafter to become aware of such an instantly formed purpose by Montgomery or that he acted or it toward consummating the homicide.” (9 A D 2d, supra, p. 512.)
Montgomery, not having taken an appeal, evidently now believes that he, too, might have benefited by an appeal. At the very least, he argues that May’s successful appeal indicates that an appeal in his case would not be frivolous. From the brief narration, it is obvious that Montgomery’s situation, as the actual killer, is quite different from that of May. It also explains why Montgomery took no appeal, and why the different sets of lawyers representing the two convicted defendants chose to appeal in the case of the one and not in the case of the other. It should also be kept in mind that in 1957, if there were a reversal and a new trial, defendant Montgomery might still have been convicted of a capital crime.[2] It is obvious that Montgomery’s lawyers instead of “ abandoning ” him, whatever that means, had done quite well for him since he was the one who stabbed the decedent youth fatally. In the case of May, on the other hand, his chances on appeal and possible retrial were less risky; something might be gained and indeed was.
The defendant does not claim that his three court-assigned lawyers promised to take an appeal for him and then failed to do so (cf. People v. Callaway, 24 N Y 2d 127; People v. Ramsey, 23 N Y 2d 656, revg. on the dis. opn. of App. Div. 28 A D 2d 1101). Bather his grievance is that neither the court nor his lawyers advised him of his right to appeal. As the majority observes there was no mandated responsibility on the lawyers in 1957 to so advise a convicted defendant and until today there was no obligation on the court. To top it off,, there is no affidavit from any of his former lawyers or any explanation why such affidavits are not submitted. Certainly, in a case like this there should be such a requirement (cf. People v. Scott, 10 N Y 2d 380). (Of course, it is incredible that one or another of his lawyers did not advise with 'him, or that he was not exposed to knowledge of the consultations between Ms *136 codefendant and the latter’s lawyers — also three in number.)
It is unfortunate that the bare and incredible allegations in this case, without supporting affidavits, should entail a hearing. But perhaps, most important, the court is announcing, in broad language, what is tantamount to a retroactive automatic extension of time to appeal, and an underwriting of the conduct of counsel in advising as to the right to an appeal, both when the court assigns counsel to represent an indigent defendant, and when counsel is privately retained. As the majority notes, the problem is of less significance for the future, because of the curative rules adopted by the several Appellate Divisions, which will prevent postconviction false assertion of lack of opportunity or knowledge to take an appeal. Under the rules the advice must be in writing.
It would be callous, indeed, to ignore that Montgomery, in light of -his age, received a harsh, although all but mandatory, sentence. That, however, is a circumstance of the particular case, for which there are other remedies, particularly that of executive clemency, if his prison record would justify clemency. The harsh sentence is no reason for condoning false applications or creating unwise rules of general application.
Accordingly, I dissent and vote to affirm. At the very least, there should be an affirmance, without prejudice to defendant’s bringing on a new application with supporting affidavits by his former lawyers, or in lieu thereof, an explanation for the absence of such affidavits.
Chief Judge Fuld and Judges Burke and Bergan concur with Judge Keating; Judge Breitel dissents and votes to affirm in an opinion in which Judges Soileppi and Jasen concur.
Order reversed and case remitted to Supreme Court, Bronx County, for a hearing in accordance with the opinion herein.

. The provocation was the unsatisfactory answer of the victim’s companion, Vaughn, as to where he lived when asked by Montgomery’s codefendant Corley. Vaughn ran away after being struck.

. That was the law in 1957 (People v. Ercole, 4 N Y 2d 617, 621; see People v. Ressler, 17 N Y 2d 174, 179).